STEPHEN D. CALLAHAN, ADMINISTRATOR, ETC., RESPONDENT, v. THOMAS R. SHARP, RECEIVER, ETC., APPELLANT.

*Negligence — when the contributory negligence of the driver of a coach bars a recovery by the hirer of it — When a child is liable for the negligence of its parent.*

The plaintiff's wife having hired a two-horse coach and a driver from a livery stable, went with her four children to attend a funeral. On their return as they came near to a railroad crossing the flagman signaled them to stop on account of an approaching train. They stopped about sixteen or seventeen feet from the crossing, whereupon the flagman signaled the train to come on. The driver then reined up his horses and struck them with the whip. They made one or two plunges and were then struck by the engine and one of the children was killed. In an action by the father, as the administrator of the child, to recover damages for its death:

*Held*, that as the driver of the coach was subject to the control and commands of the mother, his negligence was imputable to her; and that as the mother and four children were engaged in a joint enterprise, in which she acted for herself and them, the negligence so imputed to her might be attributed to the deceased, and prevented a recovery by his representatives. (BARNARD, P. J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered under the decision of the court upon the verdict of a jury assessing the

damages, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Edward E. Sprague,* for the appellant.

*Roger A. Pryor,* for the respondent.

DYKMAN, J.:

This action is on the statute for causing the death of a child about thirteen years of age, under these circumstances: The wife of the plaintiff, and mother of the deceased child, ordered a two-horse coach, with a driver, from the keeper of a livery stable, to attend a funeral in the city of Brooklyn. The coach, horses and driver were furnished, and the wife, with four children, including the deceased, rode in the coach to the funeral, and at the close of the ceremonies all re-entered the coach, and the driver started to drive them home. As they came near Atlantic avenue, a train of cars on the defendant's railroad approached from the east, and the flagman waived his red flag to the driver and the horses were brought to a stand and stopped about sixteen or seventeen feet from the track, and the flagman stood in front of the horses and waived the engine forward with his white flag, as a signal that all was right. The train proceeded and the driver gathered up the reins and struck the horses with the whip, and swung them to the right of the flagman and they made two or three plunges and the engine struck them as they reached the track, and so the disaster came.

These facts came from the witnesses of the plaintiff, and there was nothing in contradiction. The offer of the defendant to prove that the driver was guilty of negligence which contributed to the accident, was rejected, and there was an exception. Then the defendant asked to go to the jury on the question of the driver's negligence, and there was to that, refusal and exception.

A motion for nonsuit was made, on the ground that the deceased was chargeable with contributive negligence, and that there was no evidence of negligence on the part of the defendant, and that was denied, and the defendant excepted.

The request to go to the jury on the question of the defendant's negligence, was withdrawn and there was no exception to the determination of that question by the judge as a question of law. Yet

if there was no evidence of negligence on the part of the defendant, it was error to refuse a nonsuit.

An important and serious question presented in this case is whether negligence of the driver of the coach can be imputed to the occupants, and its solution depends on the relation they sustained to each other. The coach and driver were hired by the wife of the plaintiff to proceed entirely on her business; she had entire control and direction of the driver, and he was her servant and she was his superior so far as orders and directions went in relation to that excursion. She had absolute control of the business in which the driver was engaged, and exclusive direction of the means and manner of its accomplishment, and the power and right to direct the conduct of the driver in all matters pertaining thereto. When the flagman brought the horses to a stop, she had authority to direct and command him to stand or to recede, and to forbid a forward movement, and a prudent regard for the safety of herself and family would have dictated such direction. The disaster resulted from failure to exercise caution at that time in that manner. Plainly the power of control over the driver existed without exertion, and thus unrestrained and carelessly he precipitated the occupants of the coach into danger, resulting in death. If, therefore, this driver was imprudent and careless, it was because he was left unrestrained, and his want of care is fairly imputable to the wife of the plaintiff, who had control and management of the whole business, and could have prevented the misfortune. His omissions are her omissions.

There are cases where one travels in a vehicle over which he has no control, in which he is not responsible for the negligence of the driver. (*Dyer* v. *Erie R. Co.*, 71 N. Y., 228; *Robinson* v. *N. Y. C. and H. R. R. R. Co.*, 66 id., 11; *Masterson* v. *N. Y. C. and H. R. R. R. Co.*, 84 id., 247.) But these cases proceed on the ground that the plaintiff had no control of the vehicle or the driver, and had no authority to give directions for their movements.

So it is held that a passenger by railroad has no identity with the proprietors of the train conveying him, sufficient to prevent a recovery against the proprietors of another train for damages resulting from a collision through their negligence, though there was such negligence in the management of the train conveying him as

would have defeated an action by its owners (*Chapman* v. *New Haven R. R. Co.*, 19 N. Y., 341), but this is on the ground that the plaintiff had no control over the train on which he was riding. (*Webster* v. *Hudson R. R. R. Co.*, 38 N. Y., 262; *Colegrove* v. *N. Y. and N. H. R. R. Co.*, 20 id., 492.) These authorities have no application to the present case.

It may be stated for a general rule that where the relation of superior and subordinate exists, the maxim *respondeat superior* has application coextensive with the relation. "Where a master temporarily lends his servant to another, under whose immediate control he is for the time being, and whose work he is doing, the master will not be responsible for his servant's torts, committed during such temporary employment by another." (Moak's Underhill on Torts, 42.)

As the conduct of the driver of this coach was subordinate to the direction and command of the plaintiff's wife, negligence on his part was attributable to her.

Yet it remains to find the *status* of the deceased boy; because, if his position was that of a stranger accepting an invitation to ride with a person, and in a vehicle, with no control over either, then negligence of the driver cannot affect him. Was that his situation? His mother hired the establishment for the family as an entirety, for a purpose involving the interest and desire of all, and so acted for all. This child had no independent place, and his mother acted for him, with his assent, implied from the family relation. They were all engaged in a joint enterprise, and the mother acted for all in procuring the establishment and in controlling and directing its movements after the ride commenced. If she had personally taken the reins and directed the movements of the horses in that way, her control would have been no more complete than it was, and yet if she had done so and brought on the same result by her negligence, it would not be contended that this action or a similar one would lie against her, and yet if his position was independent, like that of the plaintiff in Robinson's case (*supra*), such action would be maintainable either against the mother or the defendant.

Then the plaintiff might contend well that the contributive negligence of another person for whose acts the plaintiff's intestate was not responsible, furnished no excuse for negligence of the defendant.

The conclusion reached is that the negligence of the driver may be imputed to the wife, and that being engaged in a joint enter· prise in which she acted for herself and her children, the negligence so attributed to her may be ascribed to the deceased child.

This leads to a new trial without examination of the question respecting the negligence of the defendant. Yet, if it were not so, there is not much to be said on that question as the case is presented. There was no exception to its withdrawal from the jury, and we cannot therefore look into it here. The most that can be said is that when the plaintiff rested there was possibly sufficient testimony to justify a refusal to nonsuit, but the case was not so plain as to justify its determination as a question of law.

The judgment should be reversed and a new trial granted, with costs to abide the event.

GILBERT, J., concurred, BARNARD, P. J., dissented.

Judgment and order denying new trial reversed, and new trial granted, costs to abide event.